ELECTRONICALLY FILED
Jefferson County Circuit Court
Flora Cook-Bishop, Circuit Clerk
2024-May-06 13:36:28
35CV-24-364
C11WD02 : 13 Pages

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ARKANSAS
## CIVIL DIVISION

**JOE N. BRYANT, III**                                                    **PLAINTIFF**

**VS.**                        **CASE NO.:** _____

**LESTER GRIFFIN,**
**GRIFFING PLANTING CO., INC. &**
**BROWN PELICAN FARMS, LLC**                          **DEFENDANTS**

### COMPLAINT

COMES NOW the Plaintiff, Joe N. Bryant, III, by and through the undersigned Counsel
and for his cause of action against the Defendants does state as follows:

### I.    Introduction

1.    Defendants have breached an oral contract with the Plaintiff.    Specifically,
Defendants entered into a contract with the Plaintiff wherein Defendants were allowed to use
certain real property owned by the Plaintiff, for access to their separate real property in Jefferson
County, Arkansas.    The deal was that, in return for temporary use of Plaintiff's property,
Defendants would construct a new road to access their real property.    Upon completion of
construction of the new road, Defendants agreed to cease use of Plaintiff's property and to abandon
an easement located thereon.  Plaintiff allowed the use of his real property, in furtherance of this
oral agreement.  However,  Defendants have refused to complete performance of their obligations
under the contract, and specifically refuse to complete construction of the new road. Plaintiff, Joe
N. Bryant, III, seeks an Order of the Court requiring specific performance of the Contract between
the Parties.

### II.    Parties

2.    The Plaintiff, Joe Bryant, is an individual and resident of Jefferson County,
Arkansas. His residence is located on the real property described at Exhibit A, attached hereto.

**EXHIBIT**

**1**

3.      The Defendant, Lester Griffin is an individual and resident of Mississippi.   He leases real property from Defendant Brown Pelican Farms, LLC, which is located in Jefferson County, Arkansas, and is adjacent to the Plaintiff's real property as described at Exhibit A.

4.      Defendant Griffin Planting Co., Inc. is a Mississippi Corporation which is owned and managed by Defendant Lester Griffin.  Defendant Griffin Planting Co., Inc. operates a farm and maintains a farm office adjacent to lands of the Plaintiff, as described at Exhibit A, located in Jefferson County Arkansas.  Service of process on Defendant Griffin Planting Co., Inc. can be achieved through service on its registered agent, Lester Griffin.

5.      The Defendant, Brown Pelican Farms, LLC, is a Foreign Limited Liability Company registered in Arkansas.  Service of process can be achieved on Brown Pelican Farms, LLC, by service on its registered agent, Corporation Service Company, at 300 Spring Building, Suite 900, 300 S. Spring Street, Little Rock, Arkansas. This Defendant owns real property adjacent to the Plaintiff's property as described at Exhibit A, in Jefferson County, Arkansas.  Defendant's primary business operation is located in Jefferson County Arkansas.  All Defendants are engaged in a joint venture or joint enterprise which in furtherance of farming and maintaining access across Plaintiff's property.

### III.     Jurisdiction and Venue

6.      Jurisdiction and Venue are proper in this Court. Venue is appropriate in Jefferson County, Arkansas, as Jefferson County is "in which the subject of the civil action, or some part of the civil action, is situated: The recovery of real property, or of an estate or interest in real property." Ark. Code Ann. § 16-60-102.  All of the events relevant to this dispute occurred in Jefferson County.

## IV.   Facts

7.     The Plaintiff owns real property adjacent to property owned by the Defendant, Brown Pelican Farms, LLC.  Brown Pelican Farms, LLC, leases this property to Defendants Lester Griffin and Griffin Planting Co., Inc.

8.     Defendant Brown Pelican Farms, LLC, obtained an easement across the Plaintiff's real property.[1]  All named Defendants use this easement across the Plaintiff's real property described at Exhibit A.  Their use of said easement is limited, by law, to a clearly defined 30 foot roadway, directly adjacent to Plaintiff's home.  This easement also serves as the Plaintiff's residential driveway, for the purpose of ingress and egress to Plaintiff's home.

9.     Defendants' use of the easement has routinely extended beyond and in excess of the allotted 30 feet of width as prescribed in the aforementioned easement.  Defendants use this narrow easement to allow access to real property owned by Brown Pelican Farms, LLC.  Lester Griffin works on this property and operates Griffin Planting Co., Inc. on this real property owned by Brown Pelican Farms, LLC, which joins the Plaintiff's real property.  Specifically, all Defendants are crossing the Plaintiff's property.  Defendants Lester Griffin and Griffin Planting Co., Inc. are moving large farm equipment and tractor-trailer rigs across the Plaintiff's property and the easement area.

10.     Because the Defendants were using real property outside of the scope of the aforementioned easement in favor of Brown Pelican Farms, LLC, and were driving heavy equipment across the Plaintiff's real property without his consent, Plaintiff erected gate posts on his property at the end of his driveway to outline the width of the easement to the allotted 30 feet and to ensure that Defendants use of the easement did not exceed its legal scope.

---

[1] This Easement was originally granted to a predecessor in interest to Brown Pelican Farms, LLC, (Optimum Bayou, LLC) and is attached as Exhibit B, hereto.

11.     Defendants approached Plaintiff and asked him to remove the gate posts demarcating the boundary of the easement so that they could use Plaintiff's property in excess of the easement to turn their equipment from the county road onto the easement. Put simply, the easement of record was not wide enough for the use intended by the Defendants. Defendants asked for the use of additional real property owned by the Plaintiff.

12.     Plaintiff agreed to remove the gate posts and to allow the Defendants to temporarily use his real property (outside of the easement area) in return for a promise from the Defendants they would build a new road across the Property of Brown Pelican Farms, LLC, for Defendants' sole access and that they would abandon their easement across the Plaintiff's property upon completion of said road. Defendants agreed they would not use Plaintiff's driveway for access to their property in the future.

13.     On or about November 15, 2021, The Plaintiff and the Defendants entered into an oral contract. This oral contract was specifically agreed to by Lester Griffin, individually, and in his role as the manager for Griffin Planting Co., Inc. The representative and manager of Brown Pelican Farms, LLC, Joseph Bell, similarly agreed to this contract on behalf of this Defendant. Per the terms of the contract between the parties, Plaintiff agreed to remove the gate posts demarcating the boundary of the easement and allow Defendants temporary access across his real property. In return, the Defendants agreed to build a new road, abandon the easement, and not use Plaintiff's real property for access to their separate property, in the future.

14.     The oral contract between the parties included an agreement that the new access roadway would be completed no later than the end of June, in the year 2022, and that access to Plaintiff's real property, by Defendants, would end at that time.

15.     In furtherance of this contract, the Plaintiff removed his gate posts and, as consideration to this oral contract, allowed the Defendants' use of Plaintiff's property in excess of the 30 feet allotted by the easement.

16.     Defendants partially performed their obligations under the contract by beginning construction of the access new road on or about March of 2022. The Defendants began construction by installing a culvert and gravel for the road.

17.     Defendants have since halted construction on the project to build a new road. The project was not complete by the end of June, 2022, in violation of the contract terms.

18.     In addition, Plaintiff's land includes a longstanding, fixed boundary demarcation in the form of a row of cedar trees along the boundary of the Plaintiff's real property. The Parties and their predecessors in interest have long recognized this row of cedar trees as the fixed boundary southern boundary line of Plaintiff's land.

19.     Defendants have made unauthorized, material changes to the Plaintiff's real property, including modification of the slope of the road belonging to the Plaintiff, and across which Defendants have an easement, which has created drainage problems for Plaintiff and his real property.

20.     Defendants' use of the easement also began to include reckless driving on the easement, including by employees and guests of the Defendants traveling on the easement at high rates of speed, which resulted in a high amount of dust particulates deposited into the air on Plaintiff's property.

21.     Defendants' use of the easement has become so reckless and excessive that it presents a public safety threat. Those authorized by Defendants to use this easement have operated

vehicles across the easement recklessly and negligently, resulting in the death of Plaintiff's dog and cat.

22.     Following the death of his pets and out of concern for the safety of his family, Plaintiff, as a safety measure and an improvement to his property, installed traffic thresholds commonly referred to as "speed bumps" on his real property. These "speed bumps" were intended to reduce the speeds of drivers on the Plaintiff's property and along the easement and to prevent any future losses or damage to the Plaintiff's property. The speed bumps did not inhibit Defendants' access to their property and were in place for a period of months during the years 2023 and 2024.

23.     Defendants continued to use the easement recklessly and drove on the easement at high rates of speed.

24.     Defendants then unilaterally determined to remove Plaintiff's "speed bumps" from his real property.  The Defendants took control over and removed the speed bumps from the Plaintiff's real property, against the will and absent the consent of Plaintiff.

V.     **Causes of Action**

**COUNT ONE - BREACH OF CONTRACT**

25.     Plaintiff does hereby re-allege and incorporate by reference paragraphs 1 through 24 above.

26.     On or about November 15, 2021, Plaintiff and Defendants entered into an oral agreement and contract as discussed above, where Defendants agreed to build a new road, abandon an easement, and not use the Plaintiff's driveway in the future.  Plaintiff performed all of his obligations under the contract, removed the gates, and allowed Defendants' temporary use of his property in excess of the 30 feet allotted by the easement. Defendants accepted the Plaintiff's offer

as demonstrated through their conduct and specific acceptance of, and agreement to, the material terms of the Plaintiff's offer.  Defendants even began construction of the new access road in furtherance of the contract.   The Defendants are now obligated to build the new road, abandon the easement across Plaintiff's real property, and to not use the Plaintiff's property in the future. Defendants have failed and refused and continue to fail and refuse to complete the construction of the new road.  The Defendants continue to use the easement and Plaintiff's real property.

27.     Because of Defendants' breach of contract, Plaintiff has suffered damages, including damage to his real property, consequential damages, and reliance damages including but not limited to Plaintiff's costs of performing on the contract.

28.     The Plaintiff seeks specific performance of the contract between the Parties, and the Defendants owe the Plaintiff the completion of the new road, the abandonment of the easement attached hereto, and an end to their use of Plaintiff's real property.  The Defendants are in breach of contract.

## COUNT TWO - PROMISSORY ESTOPPEL

29.     Plaintiff does hereby re-allege and incorporate by reference paragraphs 1 through 28 above.

30.     The Defendants promised the Plaintiff, Joe Bryant, that they would construct a new road, abandon the easement, and not use his driveway in the easement. This is evidenced by the construction of the new entry and culvert for the new access road.

31.     Defendants should have reasonably expected that Plaintiff would rely on that promise.

32.     Plaintiff did rely on this promise and in reasonable reliance that Defendants would begin construction and use of the new road. Plaintiff allowed Defendants to encroach onto his

private property beyond the boundaries of the easement. This was to his detriment, as he was not able to make lawful use and enjoyment of his property based on this promise.

33.     The Plaintiff has suffered reliance damages and injustice can only be avoided by an award of specific performance of the contract, along with attorney's fees and costs.

### COUNT THREE - CONVERSION

34.     Plaintiff does hereby re-allege and incorporate by reference paragraphs 1 through 33 above.

35.     Plaintiff claims damages from Defendants for conversion of his personal property, specifically traffic thresholds commonly referred to as "speed bumps" which were removed from the Plaintiff's real property by the Defendants.

36.     Plaintiff owns the land on which he installed and affixed the above-referenced speed bumps as a reasonable safety measure and improvement that did not interfere with the Defendants' right of ingress and egress.

37.     Defendants exercised dominion or control over the speed bumps and over Plaintiff's real and personal property by removing these speed bumps from the land where they were affixed by the Plaintiff, against the will and without the consent of Plaintiff.

38.     Plaintiff has suffered financial loss as a result of the removal of the speed bumps, and injustice can only be avoided by an award of compensation for the cost of construction of new speed bumps, and an injunction requiring the reinstallation of said speed bumps onto Plaintiff's property as they were originally.

### COUNT FOUR - DECLARATORY JUDGMENT

39.     Plaintiff does hereby re-allege and incorporate by reference paragraphs 1 through 38 above.

40.     Plaintiff seeks from the Court a Declaratory Judgment for a boundary by acquiescence along the Southern Boundary of the Plaintiff's real property, pursuant to Rule 57 of the Arkansas Rules of Civil Procedure. This Southern boundary should be affixed as a row of now existing cedar trees which have been long honored as the Southern boundary between Plaintiff's real property and the property owned by Brown Pelican Farms, LLC.

41.     Plaintiff also seeks from the court a Declaratory Judgment that any easement held by Defendants for ingress and egress across Plaintiff's property does not permit Defendants to make changes to the property, pursuant to Rule 57 of the Arkansas Rules of Civil Procedure.

42.     Boundary by acquiescence requires three key elements; (1) a tacit agreement between the parties or their predecessors in interest, (2) recognition of the boundary for a long period of time, and (3) a fixed line that is definite and certain. *Follett v. Fitzsimmons*, 103 Ark. App. 82, 286 S.W.3d 742 (2008).

43.     The row of cedar trees is a fixed monument of the dividing line between Plaintiff's boundary and the easement. The row of cedar trees has long been recognized as the boundary for this easement by the Parties and/or their predecessors in interest.

### COUNT FIVE – INJUNCTION

44.     Plaintiff does hereby re-allege and incorporate by reference paragraphs 1 through 43 above.

45.     Plaintiff seeks from the court an Injunction for the nuisance caused by the Defendants' use of an easement across his property, pursuant to Rule 65 of the Arkansas Rules of Civil Procedure.

46.     A nuisance is defined as conduct by one landowner "which unreasonably or unlawfully interferes with the use and enjoyment of the lands of another and includes conduct on

property which disturbs the peaceful, quiet, and undisturbed use and enjoyment of nearby property." *Miller v. Jasinski*, 17 Ark. App. 131 at 135, 703 S. W.2d at 443 (1986).

47.     "Equity will enjoin the conduct which culminates in a private or public nuisance where the resulting injury to the nearby property and residents, or to the public, is certain, substantial, and beyond speculation and conjecture." *Goforth v. Smith,* 338 Ark. 65, 991 S.W.2d 579 (1999).

48.     "However, an activity can constitute a nuisance if it creates a substantial likelihood of danger in the future or it can be shown to a reasonable certainty that danger was actually threatened rather than merely anticipated. See *id.* Indeed, nuisances have been found when the property owners' use and enjoyment of their property was made much more difficult, and the offensive activity created a risk of physical danger." See *Osborne v. Power*, 318 Ark. 858, 890 S.W.2d 570 (1994) (affirming the finding of a nuisance where an elaborate display of Christmas lights created a risk of physical danger to property owners, passing motorists, and pedestrians); *Emerald Dev. Co. v. McNeill*, 82 Ark.App. 193, 198, 120 S.W.3d 605, 609 (2003) (affirming the trial court's finding of a nuisance based upon the dangerous aspect of airport configurations and the substantial likelihood that a midair collision would occur).

49.     The conduct of Defendants unreasonably interferes with Plaintiff's use and enjoyment of his land.

50.     Dust from the road stirred up from excessive and rapid travel of semi-trucks along the easement, and the particulates emanating in the air on Plaintiff's property pose a health and safety risk to Plaintiff, Plaintiff's family, and any other occupants of the property.

51.     Defendants' trucks and employees frequently travel at a high rate of speed along the easement, coming within feet of the Plaintiff's home, prohibiting Plaintiff and other occupants

of his property from fully enjoying the property without fear of injury as a result of the use of the easement.

52.     Plaintiff's household pets, including a cat and a dog, were both killed by the reckless driving of the Defendants' employees along the easement.

53.     This disturbance further prohibits Plaintiff from even allowing animals to graze his property without fear of them being killed by the reckless use of the easement.

54.     Plaintiff seeks a Declaratory Judgment and injunction enjoining the Defendants' from maintaining a private nuisance on the Plaintiff's property.  Such an injunction should limit the speed, location, and frequency of heavy equipment and tractor-trailers in close proximity to the Plaintiff's home and should be broadly tailored to protect the safety of the Plaintiff's family.

### VI.     Jury Demand

55.     The Plaintiff hereby demands a trial by jury.

### VII.  Prayer for Relief & Damages

56.     Plaintiff does hereby re-allege and incorporate by reference paragraphs 1 through 55 above.

57.     The actions of the above-named Defendants proximately caused the damages alleged herein.

58.     Plaintiff requests that the Court enter a Judgment against the Defendants requiring specific performance of the contract partially performed by Defendant, enjoining the Defendants' nuisance activities, and establishing a boundary by acquiescence.  The Plaintiff also requests an award of damages for the conversion of the Plaintiff's personal property, all money damages shall in no event exceed $70,000.00. The Plaintiff only seeks a judgment less than the minimum amount required for removal to Federal Court.

59.     Plaintiff requests his costs, expenses, and attorney's fees for having to bring this action pursuant to all applicable Arkansas Law.

WHEREFORE, the Plaintiff respectfully prays that the Court do the following:

(a)     enter judgment in its favor and against the Defendants on each and every claim set forth herein;

(b)     Compel specific performance of the contract referenced herein;

(c)     award the Plaintiff, to the maximum extent provided by Arkansas law, its costs, expenses, and attorney's fees for having to bring this action; and

(f)     award the Plaintiff all other just and proper relief to which it is entitled by law.

DATED:  May 7, 2024

Respectfully submitted,

JOE BRYANT, III,
Plaintiff

By:     _____

J. Grant Ballard, AR Bar # 2011185
Ark Ag Law, PLLC
P.O. Box 224
Clarendon, AR 72029
870-747-3813
870-747-3767 (facsimile)
gballard@arkaglaw.com

## VERIFICATION

Joe N. Bryant, III, Plaintiff, states upon oath that he has read the statements contained in the foregoing document and that they are true and correct to the best of his knowledge and belief.

_JOE N. BRYANT, III_

STATE OF ARKANSAS              )

                              ) SS

COUNTY OF Cleveland           )

On the 2nd day of May, 2024, before me personally appeared Joe Bryant to me known to be the person named herein and who executed the foregoing for the purposes stated herein and he acknowledged to me that he voluntarily executed same.

STEPHANIE McKINNEY
NOTARY PUBLIC-STATE OF ARKANSAS
CLEVELAND COUNTY
COMM. #12718654 EXP. JUNE 04, 2032

_Notary Public_

My commission expires:

June 4, 2032